UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-cv-61387-WPD

ALEXANDER KRONFELD,

Petitioner,

v.

WARDEN/CHIEF PATROL OFFICER, et. al.,

Respondents.

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS; REQUIRING RELEASE

This Cause is before the Court on Alexander Kronfeld's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241, filed herein on May 8, 2026. [DE 1]. The Court has a carefully considered the Petition and accompanying exhibits, the Government's Response [DE 5] and accompanying exhibits, and Petitioner's Reply [DE 6], along with the supplemental authorities and exhibits [DEs 8, 9, 13, 15], and the arguments at the May 26, 2026 hearing [DE 14] and June 8, 2026 hearing [DE 16] and is otherwise fully advised in the premises.

### I.    BACKGROUND:

Alexander Kronfeld was born on July 28, 1965, in Moscow, in the Russian Soviet Federative Socialist Republic, then part of the Union of Soviet Socialist Republics. [DE 1] ¶ 14. Mr. Kronfeld is Jewish. He emigrated from the Soviet Union to the United States in 1989 through the Hebrew Immigrant Aid Society fleeing documented anti-Semitism. Pursuant to Soviet law and practice applicable to Jewish emigrants at that time, Mr. Kronfeld was stripped of his Soviet

1

citizenship as a condition of and consequence of departure. He has not held citizenship from any country since that date. *See* [DE 1] ¶ 15; [DE 1-4].

After awaiting sanctuary in Italy, Mr. Kronfeld was admitted to the United States on March 1, 1990, at the port of entry in New York, New York, as a refugee under 8 U.S.C. § 1157. *See* [DE 1] ¶ 16. His Form I-94 lists the country of citizenship as the Union of Soviet Socialist Republics — which ceased to exist on December 26, 1991. *See* [DE 1-5]. Mr. Kronfeld subsequently adjusted his status to that of a lawful permanent resident. [DE 1] ¶ 16.

On January 20, 1999, Mr. Kronfeld was convicted in the United States District Court for the Southern District of New York[1] in case number 1:94-CR-00689-017 for serving as an interpreter in a bank fraud scheme. [DE 1] ¶ 18; [DE 5-4]; [DE 5] at p. 2. He was sentenced to a term of twenty-one months imprisonment and three years of supervised release. *Id.* He surrendered to the Bureau of Prisons and served his sentence. *Id.* This was his only criminal offense; Mr. Kronfeld has not been arrested, charged, or convicted since. [DE 1] ¶ 18.

On August 24, 2000, the Government initiated removal proceedings. [DE 5-2] An Immigration Judge entered a final order of removal against Mr. Kronfeld on December 19, 2000. [DE 5-6]. That removal order designated Russia as the country of removal, even though Mr. Kronfeld is not, and was not, a citizen of Russia. *Id.*; [DE 1] ¶ 19. Following entry of the December 19, 2000 removal order, INS conducted a post-order custody review. On April 2, 2001, the Russian Embassy advised INS that it would not issue travel documents for Mr. Kronfeld because he was no longer considered a Russian citizen. *See* [DE 1-7]. Because of the refusal to accept Mr. Kronfeld, and his lack of any violent criminal history, consistent employment, and family ties, Mr.

---

[1] The Petition states Mr. Kronfeld was found guilty in the United States District Court for the District of Massachusetts—this appear to be in error. *See* [DE 5-4].

Kronfeld was released from custody on an Order of Supervision pursuant to 8 C.F.R. § 241.4. ¶ 20. *See* [DE 1-7] p. 5; [DE 5-7]. Mr. Kronfeld was released on May 15, 2001 on an Order of Supervision. *See* [DE 5-5], [DE 1] ¶ 21. Mr. Kronfeld has reported to ICE-ERO as required under the Order of Supervision throughout the supervisory period. [DE 1] ¶ 22. The record confirms no intervening criminal history. *Id.*; [DE 1-8].

On May 7, 2026, almost exactly twenty-five years after Mr. Kronfeld was originally released on his Order of Supervision, U.S. Customs and Border Protection officers arrested Mr. Kronfeld at Fort Lauderdale-Hollywood International Airport while he was boarding a commercial flight to New York City. Petitioner was issued a Notice of Revocation of Release, informing him that his release was being revoked pursuant to 8 C.F.R. § 241.13(i) as circumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future and ICE is seeking a travel document to effect his removal to Russia. *See* [DE 5-8].

The Petition challenges Mr. Kronfeld's continued detention. It asserts two claims for relief: Count I: Unlawful Detention — Violation of the Mandatory Procedural Requirements of 8 C.F.R. § 241.4(l) and the Due Process Clause of the Fifth Amendment; and Count II: Detention Not Authorized — No Viable Prospect of Removal in the Reasonably Foreseeable Future — Violation of the Due Process Clause of the Fifth Amendment and 8 U.S.C. § 1231(a)(6).

## II.    DISCUSSION

Habeas corpus is "perhaps the most important writ known to the constitutional law." *Fay v. Noia*, 372 U.S. 391, 400 (1963). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . .the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates she is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has

3

served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

Petitioner is presently detained under § 1231 as he is subject to a final order of removal. When an alien receives a removal order, the Attorney General has 90 days to remove him from the United States. § 1231(a)(1)(A). The Attorney General must detain the alien "[d]uring" his removal period, § 1231(a)(2) and may detain qualifying criminal alien "beyond" his removal period. *Id.* § 1231(a)(6). Although § 1231(a)(6) does not contain an explicit time limit on detention, the Supreme Court in *Zadvydas* read an implicit limitation into the statute "in light of the Constitution's demands" and held than an alien may be detained only for a period of time "reasonably necessary to secure removal." *Zadvydas*, 533 U.S. at 699. *Zadvydas* establishes that 90 additional days is presumptively reasonableness period under this subsection, for a total of six months. *See Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thus, to state a claim under *Zadvydas*, the noncitizen must show post removal order detention in excess of six months, and "also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

Here, Petitioner has met both prongs and therefore must be released. Under prong one, Petitioner has demonstrated that his detention has exceeded six months. This Court has taken the position that the removal period does not restart upon a later re-detention and revocation of an order of supervision. Instead, the recent detention period is added to the period of detention that followed the initial order of removal. *See Pierre v. Field Office* Director, Case No. 25-62475-WPD slip op. (Jan. 29, 2026) (collecting cases). This is in part because, under *Zadvydas*, "[t]he habeas

court must ask whether the detention in question exceeds a period reasonably *necessary to secure removal*[,]" and here, the Government has had nearly twenty five years to secure that removal. *Zadvydas*, 533 U.S. at 699 (emphasis added). Moreover, accepting the Government's theory "would effectively allow DHS to detain noncitizens indefinitely and avoid judicial scrutiny by releasing and re-detaining them every six months." *Krechmar v. Parra,* 2025 WL 3620802, at *3 (M.D. Fla. Dec. 15, 2025). District courts across the country have understood the *Zadvydas* period this way. *See e.g.*, *Balouch v. Bondi*, No. 9:25-CV-216-MJT, 2025 WL 2871914, at *2 (E.D. Tex. Oct. 9, 2025) (where a noncitizen "was previously detained, then released on supervised release . . . his 90-day removal period has long expired."); *Diaz-Ortega v. Lund*, No. 1:19-CV-670-P, 2019 WL 6003485, at *7 n.6 (W.D. La. Oct. 15, 2019) (courts "broadly agree that 'the six-month period [under *Zadvydas*] does not reset when the government detains an alien under 8 U.S.C. § 1231(a), releases him from detention, and then re-detains him again.'") (quotation omitted).

Parties agree that as of today, the cumulative time that Mr. Kronfeld has spent in detention exceeds 180 days. Following his Order of Removal on December 7, 2000 Petitioner was in detention through May 15, 2001 for a total of 159 days. More recently, Petitioner has been detained since May 7, 2026, for an additional 28 days. Therefore, total time in detention has therefore exceeded the 180-reasonableness period. Prong one is therefore met.

Under prong two of *Zadvydas*, the alien must first "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Then, the burden shifts to the Government to "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. Mr. Kronfeld has met his initial burden by demonstrating Removal to Russia — the sole country designated in the underlying removal order — is not reasonably foreseeable. Petitioner has submitted documents demonstrating he is not a citizen of Russia and that the

structure of Russian immigration law, combined with Petitioner's specific background, makes it highly unlikely that Russia will accept him. Namely, Petitioner has submitted  (1) Formal Certificate No. 4-1488/00 from the Consulate General of the Russian Federation, certifying that Mr. Kronfeld is not a Russian citizen and that Russia will not issue travel documents; (2) the April 2, 2001 Russian Embassy correspondence refusing to issue travel documents on that basis; (3) correspondence from Mr. Kronfeld to the Russian Consulate in 2008 and 2010 requesting a citizenship pathway, to which no response was received; (4) Russian Federal Law No. 138-FZ demonstrating that no consular citizenship pathway exists; (5) the text of Article 18(1)(i) establishing mandatory denial based on his conviction; (6) the government's own Post-Order Custody Review documenting ICE's 2001 finding that removal was not reasonably foreseeable and recommending release on grounds of no history of violence and the limited circumstances of his offense; and (7) twenty-five years of documented failure by ICE to obtain a travel document from any country. This documentation more than suffices to meet Petitioner's initial burden.

In turn, the Government—even after two hearing opportunities, and five weeks since the filing of the May 7, 2026 Petition—has not put forth even the scantest details about how it plans to effectuate Petitioner's removal to Russia or to a third country. At today's hearing, the Government expressly conceded that it had "no definite timeframe," for Petitioner's removal and that detention could be "indefinite." When pressed, the Government conceded it "couldn't give [the Court] anything concrete" and had "nothing to offer in terms of specifics." Where the *Zadvydas* test speaks in terms of "likelihood of removal in the reasonably foreseeable future," the Court finds that the Government has not put forward facts that demonstrate any such likelihood. *See e.g.*, *Ndandu v. Noem*, No. 3:25-CV-02939-RBM-MSB, 2026 WL 25848, at *5 (S.D. Cal. Jan. 5, 2026) (granting habeas relief where DHS could not identify a third country for removal after

one month); *Garcia-Aleman v. Bondi, et. al*, No. SA-25-CV-886-OLG (HJB), 2025 WL 3534806, at *3 (W.D. Tex. Nov. 24, 2025), *report and recommendation adopted sub nom* No. SA-25-CV-00886-OLG, 2025 WL 3532179 (W.D. Tex. Dec. 9, 2025) (ordering immediate release after OSUP revocation for withholding grant where ICE failed to demonstrate any potential third country is likely to accept for removal). Because the Government has not met its burden, the Petition is granted.

## III.   CONCLUSION[2]

Based upon the foregoing, it is **ORDERED AND ADJUDGED** that the Writ of Habeas Corpus [DE 1] is **GRANTED** as follows:

1.   Respondent is ordered to **IMMEDIATELY RELEASE** Mr. Kronfeld from custody, subject to the conditions of his preexisting Order of Supervised Release.

2.   The Government shall re-issue an Order of Supervised Release and serve on Petitioner's counsel within two days of this Order.

3.   The Court **RETAINS JURISDICTION** to enforce this Order.

4.   The Clerk is **DIRECTED** to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 8th day of June 2026.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies to Counsel of Record.

---

[2] Finding release appropriate on this basis, the Court does not reach the other grounds raised in the Petition.

7